## Friedlin Estate

*Philip C. Herr,* for accountant.
*Christopher H. Gadsden,* for objector.

TAXIS, *J.,* July 19, 1976 — Frances F. Holmes, sister of decedent, has filed two objections to the account of the executrix. Both relate to the same event. The executrix, also decedent's surviving spouse, has reimbursed herself from the estate in the amount of $3,865 representing rental payments for 11 months for her and decedent's apartment. The apartment was leased jointly for a period of one year, but decedent survived only the first month. Alternatively, we are requested to

treat the above reimbursements as a proper obligation of the estate to the extent that we should require the estate to carry as an asset the value of its leasehold interest in the apartment, and then treat this asset as distributed to the executrix by virtue of the reimbursement.

Decedent died on June 7, 1974. On September 30, 1974, his widow filed an election to take against the will. At the time of decedent's death, he and his widow resided at the Thomas Wynne Apartments, in Lower Merion Township, this county, where Mrs. Friedlin had resided since before the parties' marriage on July 14, 1971. In existence at decedent's death was an apartment lease running from June 1, 1974, through May 31, 1975, with a monthly rental of $345. The June 1974 rent was paid by decedent and is not in controversy.

After decedent's death, the widow continued to occupy the apartment until January 1976, and paid the rent for all months after June 1974. On November 15, 1975, as executrix, she reimbursed herself for 11 months' rent (July 1974 through May, 1975), and for certain additional charges, amounting to a total of $3,865. Objector takes the position that this was in the nature of distribution to the surviving spouse, on account of her share of the estate. The spouse, on the other hand, regards it as a debt of the estate.

The execution and binding effect upon the estate of the lease is not in issue. In support of her action in reimbursing herself, the executrix argues that a covenant to pay rent survives death if otherwise embodied in an enforceable contract, and that the husband is liable for the necessaries required for the support of his wife. It is doubtless true that shelter for a wife, even though it is the same shel-

ter utilized by the husband, is a necessity, although there might be some question as to whether or not shelter to the standard involved here would always be so regarded. The next step in executrix's reasoning is that a joint contract of husband and wife for such necessities is a contract of the husband alone. This may have been the law at one time (Hoff v. Koerper, 103 Pa. 396 (1883)), but we doubt that that rule, as stated, can effectively be applied now. Undoubtedly, the Married Women's Act of April 11, 1848, P. L. 536, 48 P. S. §116, so states, but whether our present Constitution (see article I, sec. 28 thereof) would permit a contract entered into jointly by a husband and wife to be imposed upon the husband alone, simply because it was providing support in some form or another, is doubtful. However, although this may be another reason for our ensuing decision, we do not rest it upon this, and specifically do not decide the current effectiveness of the Act of 1848.

What is clear is that a support obligation by one spouse for the other terminates at the death of the obligated party: Wolfsohn v. Solms, 392 Pa. 129, 139 A.2d 523 (1958). The only exception to this rule is where one spouse makes a specific covenant, either in writing or by conduct or otherwise, to have the obligation survive his or her death. The fact that both parties, as husband and wife, executed a lease for the joint occupancy of an apartment cannot be viewed as a general commitment by decedent to continue supporting his wife after his death. It is clear that the formalities of the execution of the lease by both parties were required by the landlord; and, so long as both parties survived and desired to live together, there was nothing inconsistent in this, but there cannot be

found any express intention thereby of an intent by decedent to extend his support obligation beyond the death of his wife. Therefore, we find no intent, express or to be inferred, on the part of decedent to continue the support of his wife beyond his death.

A strenuous argument is made by executrix that any liability upon the wife must be based upon the requirements of the Act of 1848, relating to the conditions to be met thereunder in order to impose primary liability upon the wife: Act of April 11, 1848, P. L. 536, sec. 8, 48 P. S. §116. However, we shall not discuss this in detail because, having held that the husband's estate is liable in full to the landlord, the only issue which remains is whether or not there should be any contribution, not primary liability, from the wife. We have determined that there should be.

Counsel for Frances F. Holmes has devoted a substantial portion of his brief to demonstrating why there should be no contribution from the estate on account of this lease obligation. The first contention is that each obligor is only prima facie obligated for his pro rata share of the debt, and that if the presumption of equal enjoyment can be overcome, then contribution must be based upon actual benefits received, and not simple equality. However, the apartment was leased for joint occupation, and it is not Mrs. Friedlin's fault that her husband died during the period of the lease. There is no equitable reason why she should be charged with the entire occupancy of an apartment that was leased for two persons, because of an unforeseen and, more important, an unpreventable, occurrence. She was content to occupy the apartment with her husband; because he died, she cannot equitably be charged with all the rent, to which obligation she in no fashion committed herself.

Dowler Est., 368 Pa. 519, 84 A.2d 209 (1951), is cited. However, there the contract was one of bailment lease, and the lessor alone, who died during the period of the lease, was titleholder. Payments made by the surviving spouse resulted in her obtaining title to the leased property. These facts are not comparable to the present situation.

Our case of Bossert Est., 10 Fiduc. Rep. 676 (O. C. Montgomery 1960), is also cited as authority contrary to the imposition of contribution here. In Bossert, we determined that the surviving spouse of decedent, who acquired real estate as a surviving tenant by the entireties, should be required to pay the mortgage obligation on the property. She had not signed the bond and was not personally liable for the mortgage debt, but took the premises under and subject to it nevertheless and had an obligation to reimburse the grantor. (Decedent's first wife had signed the bond at the time of the creation of the mortgage, had later died, and decedent remarried.) The case was ruled by an implied contract of indemnification, not by any rule of contribution. Counsel for objector reads Bossert as standing for the proposition that it is a contribution case, in which it was inequitable to require the estate to contribute. However, as we read it, the holding was not that broad, and was based upon the rule that any grantee of property subject to a mortgage becomes liable to indemnify the grantor for payments made on the mortgage, as all that could be conveyed by the titleholder was the equity which he held. The only unusual factor in Bossert was that the surviving spouse was not liable on the mortgage bond; but this was resolved by understanding that most grantees of property encumbered by a mortgage are likewise not signatories of the mortgage bond, and are not personally respon-

sible for the payment of the mortgage. This factor, therefore, becomes of little significance on the merits.

In summary, therefore, we hold that the contract of lease was joint, and binding upon both parties equally, that the rental charges for the last 11 months of its term were the equal obligations of decedent's estate and his surviving spouse, that the surviving spouse had a right to occupy the premises under the contract and cannot be charged equitably for the fact that her husband died after the contract had been in effect only one month, and that, therefore, one-half of the amount of reimbursement to the executrix, $1,932.50, shall be charged to the surviving spouse as distribution on account of her elective share of the estate.

### ORDER

And now, July 19, 1976, this adjudication is confirmed nisi.